IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| William Joshua Alston, | Case No.: 2:24-cv-04780-SAL |
| Plaintiff, | |
| v. | **ORDER** |
| Elizabeth Lawson, et al., | |
| Defendants. | |

William Joshua Alston ("Alston"), proceeding *pro se* and *in forma pauperis*, brings this civil action pursuant to 42 U.S.C. § 1983. Before the court is Defendants'[1] motion to dismiss, ECF No. 26.

## I. Background

In mid-July 2024, Alston, a pretrial detainee at the J. Reuben Long Detention Center (the "Detention Center"), began experiencing concerning symptoms that eventually led to the removal of a 35 mm tumor from his skull. This case concerns the quality of care Alston received both before and after the tumor was removed.

### A. Diagnosis

According to the complaint, Alston has a history of acoustic neuroma tumors, which caused him to lose all hearing in his left ear. [ECF No. 1 at 8, 29.] While not clearly stated, Alston appears to allege that the condition recurred while he was detained.

On July 15, 2024, a cellmate told Alston that his left eye was not blinking. *Id*. at 29. A few

---

[1] Comparing Alston's complaint with Defendants' motion to dismiss, the court identifies the defendants as Elizabeth Lawson, Steve Garman, Jennifer Lawson, Nicole Mizell, Jennifer Royster, Danielle Winn, Chassidy Queen, and Beverly Giraldi. *See* ECF No. 1 at 1–2; ECF No. 26 at 1.

1

days later, Alston reported to Nurse Nicky at the AM MedPass[2] that the left side of his mouth was numb and would not open. *Id*. Alston alleges he told Nurse Nicky about his prior brain tumor surgery in 2018, and she then called Defendant Elizabeth Lawson, the Health Services Administrator, and Defendant Dr. Steve Garman, the Medical Director of the Detention Center. *Id*. Alston claims medical personnel, without visiting his housing unit or conducting further investigation, dismissed his symptoms as Bell's Palsy and ruled out both stroke and tumor. *Id*. at 14.

On July 19, 2024, during recreation, Alston told an officer that the entire left side of his face was numb. *Id.* Medical personnel then started steroid and antibiotic treatment *Id.* The following morning Alston reported to Nurse Nicky that his "left bicep was numb and discolored." *Id*. She told allegedly told him, "[I]t will get worse before it gets better and to let the meds kick in." *Id*. The same day, Alston showed his arm to another officer, who also alerted Nurse Nicky. *Id.* That evening, Alston showed Nurse Jennifer[3] his "arm color and she said it happens with Bell's Palsy." *Id*. at 30.

On July 22, 2024, Alston showed Nurse Danielle at the AM Medpass that his "arm was now purple and numb." *Id*. She responded that he would be put on the list to be seen by medical staff. *Id.* Alston then showed his discolored hand to an officer, who sent him to medical. *Id*. There, NP Jennifer conducted balance and strength tests and determined Alston needed to go to Conway Medical Center for possible stroke treatment. *Id*.

---

[2] "AM Medpass" and "PM Medpass" appear to refer to the morning or evening, respectively, medication distribution times at the Detention Center.

[3] The complaint includes two Defendants named Jennifer: (1) "Nurse Jennifer"; and (2) "NP Jennifer." [ECF No. 1 at 2.] Alston clarifies that references to "Nurse Jennifer" refer to "Nurse Jennifer Royster" and references to "NP Jennifer" refer to "NP Lawson." [ECF No. 49 at 3–4.]

According to the complaint, on July 26, 2024, Alston had emergency brain surgery to remove a 35mm tumor. *Id*.

### B. Treatment After Surgery

Alston claims that he did not receive sufficient pain medication when he returned to the Detention Facility. *Id*. at 31. He alleges NP Jennifer altered his discharge instructions, changing the neurosurgeon's recommendation of Tylenol every four hours and ibuprofen every six hours, to a regimen of twice daily dosing. *Id*. at 12.

On August 1, 2024, Alston received only morning and evening doses despite experiencing what he described as "excruciating" pain. *Id*. at 31. The next morning, when Alston requested additional doses, Nurse Beverly told Alston that NP Jennifer had scheduled him only for AM and PM administrations. *Id*. At "midmorning," Alston claims Lawson waved his discharge papers, asserting that the Detention Center was "going above and beyond" by providing medication twice daily instead of on an as-needed basis. *Id.* She further told Alston that if he wanted additional medication, he could purchase over-the-counter supplies from the canteen. *Id*.

On August 3, 2024, after receiving medicine in the morning and evening, Alston reported the pain as getting worse—a "25 out of 10." *Id*. The next day, he again received medicine at AM and PM Medpass, leading him to vomit from pain. *Id.* Two days later, Nurse Beverly gave Alston nausea medication and said she would bring pain medicine. *Id.* Alston claims at this point his pain was a "30 out of 10." *Id*. A few hours later, he asked an officer to call medical, and Nurse Chassidy Queen said he needed to wait until Medpass. *Id*. On August 6, 2024, Alston again vomited, prompting Nurse Jennifer to visit him. *Id.* Alston claims he told her he was vomiting from pain, and she allegedly responded, "there was nothing she could do," despite having a medicine cart. *Id*. Alston then purchased Tylenol from the canteen to supplement his prescribed regimen. *Id*.

3

The complaint alleges that Defendants' actions violated Alston's constitutional rights under the Eighth and Fourteenth Amendments. *Id*. at 7. Defendants moved to dismiss, ECF No. 26. After extensive briefing, the magistrate judge found that Alston's complaint failed to state a claim for relief under Rule 12(b)(6), reasoning that Alston's claims amount to a disagreement between an inmate and a physician over medical care—something below the deliberate indifference threshold. [ECF No. 52 at 9.] Alston objects to this finding. [ECF No. 79.]

## II.     Legal Standards

### A.  Review of a Magistrate Judge's Report

The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). In response to a recommendation, any party may serve and file written objections. *See Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3)). The district court then makes a de novo determination of those portions of the Report to which an objection is made. *Id.* To trigger de novo review, an objecting party must object with sufficient specificity to reasonably alert the district court of the true ground for the objection. *Id.* (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). If a litigant objects only generally, the court need not explain adopting the Report and must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Accident Ins.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

An objection is specific so long as it alerts the district court that the litigant believes the magistrate judge erred in recommending dismissal of that claim. *Elijah*, 66 F.4th at 460. Objections need not be novel to be sufficiently specific. *Id.* Absent *specific* objections this court need not give

4

any explanation for adopting the recommendation. *Field v. McMaster*, 663 F. Supp. 2d 449, 451–52 (D.S.C. 2009). That said, the Fourth Circuit has instructed district courts that *pro se* filings, "however unskillfully pleaded, must be liberally construed." *Noble v. Barnet*, 24 F.3d 582, 587 (4th Cir. 1994).

### B. Dismissal Under Rule 12(b)(6)

On a motion to dismiss under Rule 12(b)(6), a "complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In reviewing a motion to dismiss an action pursuant to Rule 12(b)(6) . . . [a court] must determine whether it is plausible that the factual allegations in the complaint are 'enough to raise a right to relief above the speculative level.'" *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

For purposes of a motion to dismiss, the district court must "take all of the factual allegations in the complaint as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In considering a motion to dismiss, [the court] accept[s] the complainant's well-pleaded allegations as true and view[s] the complaint in the light most favorable to the non-moving party." *Stansbury v. McDonald's Corp.*, 36 F. App'x 98, 98–99 (4th Cir. 2002) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). However, while the court must draw all reasonable inferences in favor of the plaintiff, it need not accept the "legal conclusions drawn from the facts, . . . unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v.*

*Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Giarratano*, 521 F.3d at 298).

Because Alston is representing himself, these standards must be applied while liberally construing his filings in this case. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### III. Analysis

In their motion to dismiss, Defendants argue Alston's constitutional claims fail as a matter of law. [ECF No. 26.]

#### A. Fourteenth Amendment Standards

Because Alston was a pretrial detainee, his deliberate indifference claims arise under the Due Process Clause of the Fourteenth Amendment, which protects the rights of pretrial detainees to receive adequate medical care. *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) ("[T]he Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, 'mandates the provision of medical care to [pretrial] *detainees* who require it.'" (emphasis in original) (quoting *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992))).

To establish deliberate indifference to a serious medical need, a pretrial detainee must show: (1) he had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that he had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed. *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023). Under this standard, a plaintiff need not show "that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." *Id.* Instead, it is sufficient to show that the defendant's action

6

or inaction was "objectively unreasonable." *Id.* (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)).

It is still not enough to allege a defendant "negligently or accidentally failed to do right by the detainee." *Id.* at 611–12. Differences of opinion between an inmate patient and medical staff over the course of medical treatment are insufficient to state a claim of deliberate indifference. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (finding inadequate treatment due to negligence, inadvertence, or differences in judgment between an inmate and the medical personnel does not rise to the level of a constitutional violation). "Deliberate indifference is a very high standard—showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). Likewise, "mere delay" in medical treatment, without more, is not deliberate inference to a serious medical need. *Moskos v. Hardee*, 24 F. 4th 289, 298 (4th Cir. 2022).

### IV.   Objections

The magistrate judge issued a Report and Recommendation ("Report") recommending dismissal of all claims. [ECF No. 52.] Alston filed objections to the Report. [ECF No. 79.] The court addresses them separately for pre- and post-surgery care.

#### A. Treatment Before Surgery

The magistrate judge found Alston's pre-surgery claims insufficient, concluding the alleged misdiagnosis sounded in negligence, not deliberate indifference. *See* ECF No. 52 at 7–8; *see Jackson v. Lightsey*, 775 F.3d 170 (4th Cir. 2014). Alston objects to this finding and argues that diagnosing Bell's Palsy without testing was reflected disregard for his known tumor history and obvious neurological symptoms. *See* ECF No. 79 at 3, 5.

After careful consideration, the court agrees with the magistrate judge. In *Jackson*, the Fourth Circuit addressed the district court's dismissal of a deliberate indifference claim by a state

prisoner, Samuel Jackson, against a prison doctor, Dr. Joseph Lightsey. *Jackson*, 775 F.3d at 178–79. Jackson alleged that, prior to his incarceration, a cardiologist diagnosed him with congestive heart failure and prescribed numerous medications "that proved effective in managing [his] heart condition." *Id.* at 174. Upon his incarceration, Jackson met with Dr. Lightsey, who was not a cardiologist, for a screening appointment. *Id.* Jackson claimed he presented Dr. Lightsey "with medical records documenting his cardiologist's diagnosis of congestive heart failure and his prescriptions[.]" *Id*. And at that time, Jackson alleges Dr. Lightsey erroneously diagnosed him with a heart arrhythmia, a comparatively less serious condition, and altered his medication regimen. *Id.* Jackson further alleged that "his health went into a tailspin following Lightsey's intervention," and "[h]e began to experience a number of unpleasant and alarming symptoms, including chest pains and burning sensations in several parts of his body" and ultimately suffered a heart attack. *Id.* The Fourth Circuit affirmed the dismissal by the district court:

> We agree that Jackson's allegations against Lightsey, though describing behavior that might support a medical malpractice claim, do not make out a case of deliberate indifference. . . . Though hindsight suggests that Lightsey's treatment decisions may have been mistaken, even gravely so, we agree with the district court that plaintiff's claim against Lightsey is essentially a "disagreement between an inmate and a physician over the inmate's proper medical care," and we consistently have found such disagreements to fall short of showing deliberate indifference. While a non-cardiologist's erroneous diagnosis of a serious heart condition, as alleged . . . , may well represent a deviation from the accepted standard of care, standing alone it is insufficient to clear the "high bar" of a constitutional claim.

*Jackson*, 775 F.3d at 178–79 (citation modified).

As in *Jackson*, even a gravely mistaken diagnosis does not rise to deliberate indifference where it reflects a medical judgment rather than willful disregard. *Id*. Here, Alston's allegations amount to disagreement with medical staff's evaluation, which, even if negligent, does not satisfy the high deliberate indifference standard. *Jackson*, 775 F.3d at 178; *see also Short*, 87 F.4th at 611–12 ("[I]t is still not enough for the plaintiff to allege that the defendant negligently or

accidentally failed to do right by the detainee."); *Wester v. Jones*, 554 F.2d 1285, 1286 (4th Cir. 1977) ("Even if the doctor were negligent in examining [Plaintiff] and in making an incorrect diagnosis, his failure to exercise sound professional judgment would not constitute deliberate indifference to serious medical needs."). This objection is overruled.

### B. Treatment Post Surgery

The magistrate judge likewise found Alston's post-surgery claims deficient, reasoning that he failed to allege harm to his underlying condition from the alleged delay or modification of his pain management plan. [ECF No. 52 at 10–11.] Alston again objects, arguing that Defendants improperly changed his discharge orders, leaving him in chronic, debilitating pain. *See* ECF No. 79 at 14, 18.

Accepting these allegations as true, the court reaches the same conclusion as the magistrate judge. Courts have consistently held that pain and discomfort alone, absent allegations that delayed or altered treatment worsened the underlying medical condition, do not establish deliberate indifference. *Harvey v. Hobbs*, No. 1:20CV605 (TSE/TCB), 2021 WL 3641462, at *5 (E.D. Va. Aug. 17, 2021) ("Plaintiff does not allege any harm or change in either of his underlying conditions . . . from the delay in receiving his medication. Plaintiff's failure to allege any such harm is fatal to his claim despite the temporary symptoms he alleges."); *King v. Kilgore*, No. 96-40126, 1996 WL 556845, *1, 1996 U.S. App. LEXIS 43242 *1 (5th Cir. Sept. 9, 1996) (affirming district court's dismissal of prisoner's deliberate indifference claim where prisoner failed to establish substantial harm from delay in treatment that allegedly prolonged his asthma attack, causing "him pain, suffering, and discomfort"). Because Alston does not allege that the pain management regimen aggravated his surgical outcome or underlying condition, this claim also fails.

9

## V.     Conclusion

After a thorough review of the Report, the applicable law, and the record of this case, the court finds no clear error in the Report. Additionally, the court reviewed de novo the parts of the Report to which Alston objected. The court hereby **ADOPTS** the Report and Recommendation, ECF No. 52. As a result, Defendants' motion to dismiss, ECF No. 26, is **GRANTED**. Alston's constitutional claims fail as a matter of law and are therefore dismissed **WITH PREJUDICE**.

**IT IS SO ORDERED.**

August 25, 2025                                              Sherri A. Lydon
Columbia, South Carolina                           United States District Judge